J-S08035-24

2024 PA Super 77

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY A. WATKINS | : | |
| | : | |
| Appellant | : | No. 800 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 27, 2023
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0001088-2022

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                          **FILED: APRIL 19, 2024**

Appellant Timothy A. Watkins appeals from the judgment of sentence entered by the Court of Common Pleas of Centre County after Appellant was convicted of Receiving Stolen Property and Driving on a Suspended License. Appellant argues that the trial court abused its discretion in allowing the admission of screenshots from a social media website and also contends his conviction for Receiving Stolen Property was not supported by the weight of the evidence.  We affirm.

The following factual background was developed at Appellant's jury trial that was held on January 23, 2023.  On May 6, 2022, employees of Asplundh Tree Service parked several trucks containing tools and equipment at a jobsite in Boggs Township, Centre County, Pennsylvania, where Asplundh work crews were tasked with trimming tree overgrowth near powerlines.  Notes of

_____

[*] Former Justice specially assigned to the Superior Court.

Testimony (N.T.), 5/6/22, at 47-49. The Asplundh employees locked and secured the trucks before leaving them unattended over the weekend. N.T. at 48-50. On May 9, 2022, Asplundh employee Ethan Haines drove past the jobsite and noticed the trucks' doors had been broken open. N.T. at 50-56. Haines took photographs of the condition of the trucks and sent them to his foreman, Daniel Hill. N.T. at 56.

Hill went to the jobsite, conducted an inventory of the vehicles, and discovered that hundreds of pieces of specialized equipment had been stolen from the vehicles, including but not limited to, climbing lanyards, carabiners, climbing saddles, climbing spikes, climbing ropes, rope pullers, Buck Haul Bags, handsaws, and leaf blowers. N.T. at 78. Hill believed that the value of the stolen items totaled $8,400.00. N.T. at 79.

Approximately two weeks later, around May 22, 2022, Haines noticed postings on Facebook Marketplace which listed "Tree service equipment and climbing gear" for $400.00. N.T. at 57-58, 61. Haines recognized the items for sale as the equipment stolen from the Asplundh trucks as he was very familiar with the tools from working with them daily and carefully inspecting them each day for safety purposes. N.T. at 58.

Haines reported that the sales postings were linked to an account accompanied by a profile picture that listed the author of the post as Tim Watkins. N.T. at 58, 63. The sales posting showed that the listing had been made fifteen hours prior to when Haines viewed it on Facebook Marketplace. N.T. at 63. Haines took screenshots of all of the photos associated with the

Facebook Marketplace sales listing on the same day he discovered them. N.T. at 59-61.

Both Haines and Hill asserted that the equipment listed in the sales postings could be identified specifically as Asplundh property as the tools were marked with color-coded tape and zip ties pursuant to company policy. N.T. at 101, 111, 130. Hill explained that as an Asplundh foreman, he is responsible for purchasing specialized and upgraded equipment that exceeds OSHA compliance requirements to promote employee safety. N.T. at 82. Hill testified that he is required to perform quarterly safety inspections on all tools and equipment. N.T. at 75. In doing so, Hill follows company policy in utilizing a color-coded system in which a particular color of tape or zip tie is placed on a piece of equipment to show it had been inspected. N.T. at 84-88.

Hill had completed the first quarter safety inspections in 2022 in which he marked equipment that he had inspected with yellow tape and zip ties. Hill had started the second quarter round of inspections, which required green tape and zip ties to be placed on the equipment to show completion of inspection. N.T. at 90. Hill testified that this color-coding system was unique to Asplundh and he was not aware of any other companies using this process. N.T. at 95-96.

Hill went through each of the Facebook postings and pointed out the markings and identifications that were on the equipment that showed him the items for sale were property of Asplundh. N.T. at 104-135. Hill offered a

detailed computation in which he asserted that the replacement value of the posted items was $2,111.16. N.T. at 103; Commonwealth's Exhibit 4.

Trooper Lucas Dixon was assigned to investigate the reported theft of the Asplundh equipment. N.T. at 158-59. Based on the information provided from Haines and Hill, Trooper Dixon obtained a search warrant and court order seeking Facebook account information from Meta, Facebook's parent company. N.T. at 169-76. Trooper Dixon discovered that the account in question was created on April 3, 2022 by an individual named Tim Watkins located in Bellefonte, Pennsylvania. The account listed a birthdate, cell phone number, and a photo reflecting Appellant's likeness. N.T. at 179-80.

Trooper Dixon was able to locate Appellant's address through the PennDOT database and arranged for Appellant to come to his barracks for an interview. N.T. at 183. When Trooper Dixon showed Appellant the screenshots of the Facebook sales listings, Appellant admitted to creating the posts advertising those items for sale from his social media account. N.T. at 184. After Trooper Dixon asked Appellant about his employment status, Appellant indicated that he was unemployed and stated that he had never worked for Asplundh or any tree trimming company. N.T. at 184-85.

At the conclusion of the bifurcated trial, the jury convicted Appellant of the Receiving Stolen Property charge and the trial court convicted Appellant of Driving with a Suspended License. On March 27, 2023, the trial court imposed a sentence of six to twelve months' imprisonment as well as restitution, fines, and costs. On April 5, 2023, Appellant filed timely post-

sentence motions, which the trial court subsequently denied on May 23, 2023. This timely appeal followed. Appellant complied with the trial court's direction to file a concise statement of errors on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review on appeal:

I. Whether the trial court erred in denying Appellant's motion *in limine* regarding the alleged Facebook photographs?

II. Whether the trial court erred in denying Appellant's motion *in limine* regarding testimony concerning the origination of the alleged Facebook photographs?

III. Whether the weight of the evidence was sufficient for Appellant to be convicted of the offense of Receiving Stolen Property?

Appellant's Brief, at 8.

Appellant's first two related issues involve his allegation that the trial court erred in denying his motion *in limine* in which Appellant sought to preclude the introduction of the Facebook screenshot images and testimony about these images. Our standard of review is as follows:

> When reviewing the denial of a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. ***See Commonwealth v. Zugay***, 745 A.2d 639 (Pa.Super. 2000) (explaining that because a motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to trial, which is similar to a ruling on a motion to suppress evidence, our standard of review of a motion *in limine* is the same as that of a motion to suppress). The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion.
>
> The admissibility of evidence is a matter directed to the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused that discretion. ***Commonwealth v. Wallace***, 522 Pa. 297, 561 A.2d 719 (1989).

*Commonwealth v. Mabus*, 300 A.3d 1057, 1065–66 (Pa.Super. 2023) (quoting *Commonwealth v. Stokes*, 78 A.3d 644, 654 (Pa.Super. 2013)).

Specifically, Appellant argues that the Facebook screenshots should not have been admitted as they could not be properly authenticated. Pennsylvania Rule of Evidence 901 governs the authentication of evidence. As a general rule "authentication requires a low burden of proof: [t]he proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be." *Commonwealth v. Jackson*, 283 A.3d 814, 818 (Pa.Super. 2022) (quoting Pa.R.A.P. 901(a)) (other citation omitted).

Rule 901(b)(11) specifically addresses the authentication of "digital evidence," which is defined as "a communication, statement, or image existing in an electronic medium," such as "emails, text messages, social media postings, and images." Pa.R.E. 901(b)(11), cmt. The rule provides that a proponent may show that an individual or entity is connected to digital evidence through:

> (A) direct evidence such as testimony of a person with personal knowledge; or
>
> (B) circumstantial evidence such as:
>
>> (i) identifying content; or
>>
>> (ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901(b)(11).

The comment to Rule 901 further clarifies that "the proponent of digital evidence is not required to prove that no one else could be the author. Rather, the proponent must produce sufficient evidence to support a finding that a particular person or entity was the author." Pa.R.E. 901, cmt. Furthermore,

[c]ircumstantial evidence of identifying content under Pa.R.E. 901(b)(11)(B)(i) may include self-identification or other distinctive characteristics, including a display of knowledge only possessed by the author. Circumstantial evidence of content may be sufficient to connect the digital evidence to its author.

Circumstantial evidence of ownership, possession, control, or access to a device or account alone is insufficient for authentication of authorship of digital evidence under Pa.R.E. 901(b)(11)(B)(ii). *See, e.g., Commonwealth v. Mangel*, 181 A.3d 1154, 1163 (Pa.Super. 2018) (social media account bearing defendant's name, hometown, and high school was insufficient to authenticate the online and mobile device chat messages as having been authored by defendant). However, this evidence is probative in combination with other evidence of the author's identity.

Pa.R.E. 901, cmt.

In this case, Appellant asserts that the screenshots could not be authenticated as there are no markings on the screenshots to show they were taken from Facebook. Appellant's Brief, at 20-21. Further, Appellant asserts that there was no testimony of any individual who observed Appellant posting the relevant photographs on Facebook Marketplace.

However, Appellant fails to acknowledge that the prosecution presented testimony from Trooper Dixon who averred that Appellant admitted that he had created the sales postings in question from his own Facebook account when Trooper Dixon showed Appellant the screenshots in evidence. Appellant

does not challenge Officer Dixon's credibility on this point. Thus, Appellant's own admissions identified him as the author of the sales posts in question.

In addition, Appellant's admission was corroborated by other evidence presented by the Commonwealth. While the screenshots did not contain markings to show they were retrieved from Facebook, Asplundh employee Ethan Haines testified in detail regarding how he came across the photographs at issue on Facebook Marketplace and why he believed that the items for sale were the equipment stolen from his employer. Haines described the process of how he took screenshots of each of the photos attached to the post and explained how he determined when the posts were made and from which account user. This testimony was relevant to authenticate the posts in question. Despite Appellant's claims to the contrary, the Commonwealth was not required to present the testimony of an individual who observed Appellant posting the relevant photographs on Facebook Marketplace.

Further, the prosecution introduced records from Meta, Facebook's parent company, which provided user information for the Facebook account that had posted the photographs, including the author's birthdate, hometown, and profile picture. The Commonwealth demonstrated that the author's profile picture resembled Appellant and the user's birthdate and hometown matched Appellant's biographical information.

As a result, we agree with the trial court that the prosecution presented ample evidence to authenticate the Facebook Marketplace listings as posts created by Appellant. Thus, the trial court did not abuse its discretion in

denying Appellant's motion *in limine* seeking to exclude the admission of the screenshots.

In his last issue, Appellant alleges that "[t]he trial court erred in determining the weight of the evidence was sufficient for Appellant to be convicted of the offense of Receiving Stolen Property." Appellant's Brief, at 24. In reviewing Appellant's argument, it appears that Appellant has conflated the issues of the sufficiency and weight of the evidence and attempts to address them in one argument. However, this Court has clarified the distinction between these two challenges:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> **A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict.** Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine

that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000) (citations & quotations omitted, emphasis added).

Appellant asserts that the Commonwealth failed to prove that the photographs of the equipment on sale depicted the missing Asplundh tools. Appellant criticizes Hill and Haines' identification of the tools as Asplundh property due to their markings with yellow and green tape and zip ties, which Appellant argues "can be bought by anyone at Home Depot or Lowe's or any home improvement store." Appellant's Brief, at 26. Further, Appellant argues that his son had a tree cutting business which explained Appellant's "potential possession of tree equipment." Appellant's Brief, at 26.

These contentions go to the weight of the evidence, as Appellant would have us accept his alternate explanations of the circumstances at issue. We will thus address Appellant's claim as a weight claim, and not a challenge to the sufficiency of the evidence.[1]

We are guided by the following standard of review:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the

---

[1] To preserve a weight of the evidence claim for appeal, a defendant must raise this claim "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." *Commonwealth v. Juray*, 275 A.3d 1037, 1047 (Pa.Super. 2022), (*quoting* Pa.R.Crim.P. 607(A)(1)-(3)). Appellant raised a challenge to the weight of the evidence in his post-sentence motion.

evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Landis*, 277 A.3d 1172, 1183–84 (Pa.Super. 2022) (citations omitted). To prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa.Super. 2015) (citation omitted).

*Commonwealth v. Deible*, 300 A.3d 1025, 1032–33 (Pa.Super. 2023).

We find the trial court properly exercised its discretion in determining that there are no certain facts that "are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Widmer*, *supra*. The Commonwealth presented testimony to establish that specialized tree trimming and climbing equipment was stolen from Asplundh work trucks parked at a jobsite. Approximately two weeks after the theft, Asplundh employees discovered listings on Facebook Marketplace that were attempting to sell a collection of tree trimming and climbing equipment which were marked with Asplundh's unique color-coded inspection system. The posts were made from the Facebook account belonging to Appellant, who admitted creating the sales posts at issue. The specialized equipment was being sold for $400, which was a fraction of the actual value of the gear that was estimated to be $2,111.16.

Although Appellant is correct in noting that any individual can buy yellow and green tape and zip ties at a local home improvement store, this assertion does not invalidate the testimony of the Asplundh employees who testified that the markings on the photographed items and their signature characteristics led the employees to believe the sales listings depicted Asplundh property.

Similarly, while Appellant alleges on appeal that his son owned a tree cutting business, the jury was free to disbelieve Appellant's suggestion that the equipment that he was selling belonged to his son. There were only a few passing references to Appellant's son in the investigation of this matter and at trial. When defense counsel asked Trooper Dixon if Appellant told him that his son had a tree business, Trooper Dixon responded that he did not. N.T. at 190. Trooper Dixon indicated that while Appellant denied working in the tree trimming business in his interview, Appellant did not mention anything about his son working in the tree trimming business. N.T. at 195.

We remind Appellant that the jury was free to accept or reject his version of the facts surrounding the circumstances at issue. *Commonwealth v. Sheets*, 302 A.3d 145, 151 (Pa.Super. 2023) (emphasizing that "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence"). Accordingly, we conclude that the trial court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>04/19/2024</u>