J-S09033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH DILFALCO | : | |
| | : | |
| Appellant | : | No. 1993 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 19, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007929-2018

BEFORE: LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED APRIL 16, 2025**

Appellant Joseph Difalco appeals from the judgment of sentence imposed following his conviction for robbery and related offenses. Appellant argues that the trial court erred in denying his Pa.R.Crim.P. 600(A) motion to dismiss and, further, he claims that the verdict was against the weight of the evidence. The instant matter was previously brought before this Court, raising the same issues, in the case docketed at 2180 EDA 2022. Following review, this Court vacated and remanded for a new Rule 600 hearing. Said hearing was subsequently held on December 18, 2023, presided over by the Honorable Judge Zachary Shaffer of the Philadelphia County Court of Common Pleas. As such, the matter is now ripe for our disposition, and, following review of the updated record, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

The factual and procedural history of the case is as follows: on August 8, 2018, Appellant was arrested and charged with, *inter alia*, robbery, firearms not to be carried without a license, carrying firearms in public in Philadelphia, simple assault, theft by unlawful taking, receiving stolen property, possession of an instrument of a crime, recklessly endangering another person, and terroristic threats.[1] Following several delays of the proceedings, Appellant filed a Motion to Dismiss pursuant to Pa.R.Crim.P. 600 on September 14, 2021. On November 1, 2021, a hearing on that motion was held, presided over by the Honorable Judge Mia Roberts Perez. Judge Perez denied Appellant's motion to dismiss, and a waiver trial before the lower court commenced immediately following the denial. At trial, the Commonwealth established the following:

On August 5, 2018, the victim, Ruben Ruiz, was in his apartment located at 1821 East Hagert Street in Philadelphia. N.T. 11/1/21 at 26. At that time, Mr. Ruiz was in the business of selling marijuana. *Id.* at 26, 50-51. Several days prior to August 5, Appellant and the victim began to communicate *via* text messages, having been introduced by a mutual acquaintance. *Id.* Appellant was initially known to the victim by the *alias* "Ses." *Id.* at 64. On August 4, Appellant and victim texted to arrange for a buy to be conducted outside the victim's apartment. *Id.* at 26. When Appellant arrived, he was accompanied by an individual not known to the victim, whose name the victim

_____

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), 6106(a)(1), 6108, 2701(a), 3921(a), 3925(a), 907(a), 2705, and 2706, respectively.

later learned was "Santiago." *Id.* at 28-29. Appellant asked the victim if his friend could use the victim's bathroom, to which the victim agreed. *Id.* The three took the elevator up to the fifth floor, where the victim's apartment was located. *Id.* The victim put his dog away, and then he let the two other men into the apartment. *Id.* While Santiago was in the bathroom, Appellant and victim spoke, and victim gave Appellant the marijuana he had arranged to purchase. *Id.* at 53. Appellant did not pay for the marijuana. *Id.* Appellant then used the bathroom after Santiago. *Id.* at 28-29. Upon exiting the bathroom, Appellant was holding a black sawed-off shotgun. *Id.*

While holding the gun, Appellant told the victim to hand over his wallet and phone, which the victim did. *Id.* at 30, 56-57. The victim then saw that Santiago was wearing brass knuckles and was standing between himself and the door. *Id.* at 30, 40. The victim panicked, and attempted to leave the apartment. *Id.* As the victim ran past, Santiago "either [. . .] punched [the victim] or blocked [him] from getting out of the door," but the victim clarified that "whatever happened, it didn't track or make contact," and the victim was able to flee the apartment. *Id.* at 40. The victim then checked every door along the hallway, looking for one that was open. *Id.* After finding that his neighbor Luba Ulyansky's door was unlocked, the victim went inside and called the police with her assistance. *Id.* at 31, 67.

Ms. Ulyansky was called to testify at trial, and confirmed that, on the date in question, the victim ran into her apartment fleeing from a man with a

gun. *Id.* at 67. Ms. Ulyansky recalled that the victim informed her at that time that "he was selling weed to [a man], and [the victim] let [the man] use the bathroom, and the man came out with a gun." *Id.* at 68. She confirmed that she had left her door unlocked, and that the victim came in "very stressed, like anybody would be if somebody was chasing them. He was running [and] yelling." *Id.* Ms. Ulyansky texted a police officer with whom she was friends, and the victim called the police from her apartment. *Id.*

Detective James Gruninger also testified at trial, having processed the scene of the crime. *Id.* at 72-73. Two cell phones were recovered from the scene, one of which belonged to the victim. *Id.* Review of security camera footage from the apartment building yielded images of the victim and two males accompanying him into the building. *Id.* The victim identified the Appellant as one of the men in the footage, using the name "Ses," and was able to provide Detective Gruninger with contact information for Appellant. *Id.*

Using that information, Detective Gruninger was able to link Appellant to various online social media accounts, including both Facebook and Instagram accounts of Appellant and Appellant's girlfriend. *Id.* at 76. Review of those accounts by Detective Gruninger yielded Appellant's legal name, Joseph Difalco. *Id.* at 77. Detective Gruninger was then able to obtain a search warrant for Appellant's apartment; execution of that search warrant on August 6, 2018, yielded the clothing Appellant was wearing in the security camera

footage, as well as brass knuckles. *Id.* 77-79. No firearm was recovered from Appellant's apartment. *Id.* The victim also provided the detective with a text message sent from the Appellant which stated "I hope you didn't talk too much to the police. It's not good for drug dealers to cooperate with the law." *Id.* at 45.

Following trial, Appellant was found guilty on all counts except for terroristic threats, of which he was found not guilty. *Id.* at 101. Appellant was subsequently sentenced on February 18, 2022, to an aggregate term of five to ten years of confinement. N.T. 2/18/22 at 27-28.

On February 25, 2022, Appellant timely filed a motion for reconsideration challenging the discretionary aspects of his sentence, and a second, separate, post-sentence motion challenging the weight of the evidence. On February 28, 2022, the trial court entered an order denying Appellant's motion for reconsideration of sentence without a hearing; however, the order purporting to deny Appellant' separate post-sentence motion was not entered until October 6, 2022, two-hundred and twenty-three days after the motion was filed. Therefore, the motion had already been denied by operation of law pursuant to Pa.R.Crim.P. 720(B)(3)(a), despite the clerk of courts failing to enter an order stating as much. Wherefore, in light of that breakdown in court operation, on May 5, 2022, Appellant filed a Post Conviction Relief Act ("PCRA") petition seeking reinstatement of his direct appeal rights *nunc pro tunc*, which was granted by the trial court.

Following reinstatement of his appellate rights, Mr. Difalco timely filed a Notice of Appeal on August 10, 2022. Said filing resulted in the above-referenced appeal docketed at 2180 EDA 2022. Therein, this Court vacated the order denying Appellant's September 14, 2021, Motion to Dismiss pursuant to Pa.R.Crim.P. 600 and remanded for a new Rule 600 hearing.

Said hearing was subsequently held on December 18, 2023, presided over by the Honorable Judge Zachary Shaffer of the Philadelphia County Court of Common Pleas. At that time, the lower court acknowledged that the complaint was filed on August 8, 2018, and the matter was not brought to trial until November 1, 2021. N.T. 12/18/23 at 8, 24. However, the court held that, of the one-thousand, one-hundred and eighty-one (1,181) days of delay, eight-hundred and ninety-five (895) days were excludable from the Rule 600 calculation, yielding an adjusted Rule 600 run date of January 19, 2022. Trial Court Opinion filed 9/24/24 at 5. The excludable time was accounted for as follows:

A **sixteen-day** continuance of the preliminary hearing, moving the proceeding from September 24, 2018, to October 10, 2018, was caused by the unavailability of Appellant's co-defendant's counsel and the Commonwealth's refusal to sever the matters. Relying on ***Commonwealth v. Robbins***, 900 A.2d 413, 417 (Pa. Super. 2006), the lower court held this delay did not run against the Commonwealth, because the Commonwealth is

not required to sever even in light of Rule 600 considerations. Trial Court Opinion filed 9/24/24 at 5.

A **twenty-three-day** continuance of the preliminary hearing, moving the proceeding from October 10, 2018, to November 2, 2018, was caused by the appointment of new defense counsel; the Commonwealth was at that time present and ready to proceed. Wherefore, the lower court held this delay did not run against the Commonwealth. *Id.* at 4.

A **one-hundred-and-twenty-six-day** continuance of the trial, moving the proceeding from June 18, 2019, to October 22, 2019, was caused by the failure of the Sheriff to transport the defendant from custody in Bucks County to the Courtroom for trial; the Commonwealth was "otherwise ready in the room." *Id.* at 4; N.T. 12/18/23 at 27. The Court held that this time was attributable to the Court itself, and, therefore, the time did not run against the Commonwealth. Trial Court Opinion filed 9/24/24 at 4.

A **one-hundred-and-forty-seven-day** delay was caused by a continuance of the trial, requested by defense, moving the proceeding from October 22, 2019, to, initially, March 24, 2020; however, on March 17, 2020, Rule 600 was suspended due to the global COVID-19 pandemic. Wherefore, the court held that the time between October 22, 2019, and March 17, 2020, did not run against the Commonwealth, as the delay was caused by the defense request. *Id.* at 4.

A **five-hundred-and-sixty-three-day** delay, beginning on March 17, 2020, and continuing through to October 1, 2021, as noted above, was caused by the Covid-19 global pandemic and subsequent suspension of Rule 600. *Id.* The lower court held that time did not run against the Commonwealth. *Id.*

Finally, A **twenty-day** continuance of the trial, moving the proceeding from October 12, 2021, to November 1, 2021, was requested by the defense. *Id.* at 5. Wherefore, the court held that time did not run against the Commonwealth. *Id.*

On December 19, 2023, the lower court entered its order denying Appellant's motion based upon the findings outlined above. Appellant filed a timely notice of appeal on January 17, 2024, but did not file a concise statement of maters complained of on appeal within the prescribed period. The lower court issued an opinion on March 8, 2024, and on March 11, 2024, Appellant discontinued his appeal in the matter docketed at 298 EDA 2024.

On March 28th, 2024, Appellant filed a second PCRA petition seeking reinstatement of his appellate rights, which was granted by the lower court. Appellant filed a notice of appeal to this Court on August 14, 2024. The instant appeal followed.

Appellant raises the following issues on appeal:

1. Whether the lower court abused its discretion in denying Appellant's Rule 600(A) Motion for Dismissal, where the motion was heard and denied on November 1, 2021, which was 172

- 8 -

days beyond the adjusted run date of May 13, 2012[2], thereby violating Appellant's statutory right to a speedy trial?

2. Whether the trial court's verdict finding Appellant guilty of Robbery, Criminal Conspiracy and Carrying a Firearm without a License were [*sic*] against the weight of the evidence, where no proceeds of the robbery were recovered as a result of execution of a search warrant at Appellant's home, the Complainant alleged that Appellant possessed a sawed off [*sic*] shotgun, but no firearm waw [*sic*] recovered by police or observed in Appellant's possession during videotape surveillance of the counter, and the Complainant admitted at trial the [*sic*] he falsely reported to policer [*sic*] that the Co-Defendant punched him in the mouth with brass knuckles, and also testified that he falsely told police that Appellant had stolen his cellphone, along with other inconsistent and contradictory statements?

Brief of Appellant at 6

In analyzing Appellant's weight of the evidence claim, we apply the following standard of review:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. To prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

---

[2] This Court notes with displeasure what appears to be a typographical error, as this proposed adjusted run date predates the arrest of the Appellant in this matter by several years. The adjusted run date is the very issue disputed in the instant appeal, and therefore precision is paramount.

***Commonwealth v. Watkins***, 315 A.3d 145, 152 (Pa. Super. 2024) (citations omitted).

Further, "[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses;" this court cannot substitute our judgment for that of the factfinder. ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2015). Even should there be apparent contradictions in testimony, those are matters for the finder of fact to resolve. ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000).

Here, we find that the trial court properly exercised its discretion in denying Appellant's motion challenging the weight of the evidence. The court appropriately separated Appellant's argument into four distinct challenges:

> "(1) no proceeds were recovered during the execution of the search warrant; (2) no gun was recovered or viewed on Appellant's person in surveillance footage; (3) Mr. Ruiz made a false report to police with regard to being punched in the face with brass knuckles; and (4) Mr. Ruiz falsely testified that Appellant took his cell phone."

Trial Court Opinion 12/16/22 at 7.

In addressing the first two claims regarding the results of the August 6, 2018, search of Appellant's home, the lower court reasoned that the police not having recovered any proceeds from the robbery nor the firearm used in the commission of the crime did not weigh against the Commonwealth's case to a degree that warranted a not guilty verdict because the search did not occur until the day after the crime had been committed. ***Id.*** The Court noted

that there was ample time for those materials to be discarded, and motivation not to keep incriminating items at one's own residence. *Id.* at 7-8. Regarding the lack of photographic or video evidence depicting Appellant physically holding a firearm, the trial court noted that the same is consistent with the victim's account; the victim maintained that Appellant concealed the firearm on his person until he came out of the bathroom holding the weapon. *Id.* at 8.

To the third claim regarding the alleged inconsistencies in the victim's testimony, the lower court held that the victim's testimony "minorly differed from his earlier statement to police and testimony at [the] preliminary hearing." *Id.* The trial court found Appellant's assertion that those inconsistencies rose to the level of false reports "wholly meritless." *Id.* Regarding the matter of the brass knuckles, the court stated" [the victim] constantly maintained that he never suffered any injury during the robbery and never stated to law enforcement or court that he was violently punched or struck with any significant level of force by either assailant." *Id.* The victim did admit that "his memory of the exact play-by-play was no longer crystal clear," which the court found to be "credible and understandable." *Id.* These credibility determinations are well-within the provenance of the trial court to make, and we find no abuse in discretion in its having done so. *See Hopkins, supra*.

To the fourth claim, concerning the disposition of the victim's cell phone, the lower court soundly reasoned that the police having found the cell phone left at the scene does not negate or contradict any evidence presented by the Commonwealth. *Id.* at 9. As the lower court noted, it was not alleged by the Commonwealth that Appellant took the phone away from the building, but that he took the phone from the victim's person; what was done with the phone after that point was not addressed by the Commonwealth's case-in-chief. Furthermore, the victim's testimony that the phone was taken from him is corroborated by his having run to his neighbor's apartment to call the police from her telephone. *Id.*

Thus, the lower court demonstrated sound reasoning in addressing Appellant's challenges to the weight of the evidence.

On Appeal, Appellant's brief recounts these same challenges, but stops, so far as this court can tell, mid-sentence in developing their argument as to why the lower court's findings concerning those challenges constituted an abuse of discretion. Brief of Appellant at 17 ("Although apparently this was the proverbial drug deal gone bad, there is no credible evidence that Appellant possessed a firearm, threatened, or assaulted the Complainant, or took anything from him. Certainly there [sic]"). The brief then breaks to a new line, new paragraph, beginning "Accordingly for the foregoing reasons[…] ," having left out, it appears, the reasons intended to have foregone the conclusion. As a result, the argument is left woefully incomplete.

The trial court clearly and succinctly outlined its reasoning as to why it found the Appellant's challenges to the weight of the evidence inadequate; it disagreed with Appellant's characterizations of the testimony as dishonest, and outlined specific merits of the testimony that was found credible. The question presented on appeal is not whether the verdict was against the weight of the evidence, but whether the trial court abused its discretion in holding that the verdict was not against the weight of the evidence, and Appellant simply has not developed a compelling argument to that point. Rather, we have been invited to review the record and determine whether we disagree with the trial court's assessment of the credibility of witnesses, and the weight afforded to the evidence. In holding with our well-established precedent, we decline to do so. After review of the trial court's opinion filed December 16, 2022, we find no abuse of discretion.

Regarding Appellant's challenge to the lower court's denial of his motion to dismiss pursuant to Pa.R.Crim.P. 600(A), we employ an abuse of discretion standard of review:

> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. Moreover, an appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters ..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Carl*, 276 A.3d 743, 748 (Pa. Super. 2022) (citation omitted).

Here, Appellant takes issue with only two rulings of the lower court regarding excludable time under Rule 600. Appellant's first challenge concerns the lower court's holding that "the Commonwealth's request to continue the preliminary hearing from September 14, 2018, to October 10, 2018, a period of twenty-six days, does not fall against the Commonwealth when it refuses to sever." Brief of Appellant at 15. However, it appears that Appellant conflated two separate continuances, as, so far as this Court can tell, there was no continuance granted on September 14, 2018. Further, the reasoning for the ruling challenged by the Appellant in his brief concerning refusal to sever relates to a continuance that occurred on September 24, 2018, and only

resulted in a sixteen-day delay. While there was a twenty-seven-day delay which occurred immediately prior to the sixteen-day delay, having been granted on August 23, 2018, that time was held to run against the Commonwealth, as the parties agreed it was a Commonwealth request for a continuance. N.T. 12/18/23 at 8-9.[3]

In any case, we find no abuse of discretion in the lower court's ruling regarding either the August 23, 2018, continuance or the September 24, 2018, continuance. Delays caused by the unavailability of a co-defendant are not attributable to the Commonwealth for the purposes of Rule 600; severance of the matters was not required. *See Commonwealth v. Robbins*, 900 A.2d 413, 417 (Pa. Super. 2006) ("[S]everance is not required of the Commonwealth when it faces a possible Rule 600 violation, and the trial court should not have factored the refusal to sever in its Rule 600 analysis.").

The second challenged ruling concerns the one-hundred-and-twenty-six-day delay beginning on June 18, 2019, through to October 22, 2019. Appellant contends that the lower court erroneously excluded the delay where "there is no evidence that the Commonwealth issued a bringdown and writ for the defendant's appearance as required for Rule 600 compliance." Brief of Appellant at 15 (*citing Commonwealth v. Mines*, 797 A.2d 963, 965 (Pa.

---

[3] This mistake is particularly confounding where Appellant clearly identified these two separate continuances, the dates they were granted, and the lower court's reasoning regarding the delays, in their itemized list of continuances which appeared merely two pages prior in their brief. Brief of Appellant at 12.

- 15 -

Super. 2002)). Here, Appellant imposes a duty upon the Commonwealth that is not supported by, and further is contrary to, this Court's holding in **Mines**.

First and foremost, the Commonwealth, through the Office of the District Attorney, does not have the authority to issue a writ to transport a prisoner *sua sponte*, and as such to do so cannot be incumbent upon the prosecution. **Commonwealth v. Torres**, 741 A.2d 218 (Pa. Super. 1999) ("Writs are court orders."). More than a semantic distinction, that the prosecution is not empowered to issue the writ itself and, further, is not in control of the various other agencies whose participation is required to effectuate the appearance of the accused at trial, are key factors in the holding this Court announced in **Mines**.

In that case, the question before this Court, relative to Rule 600, was "whether the Commonwealth [was] responsible for the delay caused on March 5, 1999, and May 20, 1999," where Mr. Mines was not brought to court for trial on either of those dates. **Mines**, **supra**, at 964. There, unlike in the matter *sub judice*, it is true that a writ had been issued by the Court for the May 20, 1999, trial date, but, due to overcrowding in the county prison, the writ was not honored. **Id.** at 965. There simply were not enough beds to transfer Mr. Mines from the state prison system to the county. **Id.** However, similar to this instant matter, "for the March 5, 1999, listing, [this Court could not] be sure whether or not a writ was requested" by the Commonwealth, at all. **Id.** at 966.

- 16 -

Nonetheless, we held "[t]he time period from March 5, 1999 to May 20, 1999 […] was excusable." *Id.* We recognized that "it is not within the control of either the prosecutor or the trial court to bring every defendant to the courtroom when desired." *Id.* at 965. Rather, where a breakdown in prisoner transport occurs, "it is difficult […] to ascertain which of a number of agencies are at fault[;] the possibilities generally fall with the Clerk of Quarter Sessions, the Sheriff, and the state prison system. These are all independent agencies, which generally blame each other." *Id.* at 966.[4] In the instant case, the lower court's ruling falls squarely within the reasoning of this Court's decision in *Mines*:

> "We have a court continuance from 6/18/2019 of a hundred and twenty-six days. The defendant was not brought down but the Commonwealth was ready. I'm not going to charge that time against the Commonwealth as I stated earlier my calculation for 600 [*sic*] because that was a Court continuance. **The Sheriff had simply not brought him down.** The Commonwealth was otherwise ready in the room."

N.T. 12/18/2023 at 26-27 (emphasis added).

Therefore, not only does our decision in *Mines* not establish a bright-line rule requiring the Commonwealth to prove it had issued a writ to transport the accused or else risk running afoul of Rule 600, it instructs us against

_____

[4] We do note that this matter is distinguishable from *Mines* in that Mr. Difalco was not housed in the state prison system, but rather was held in county custody. N.T. 12/18/2023 at 16. However, this is a distinction without difference; the county prisons are no more under the control of the prosecution than is the state prison system, and in this matter the failure to transport was attributed by the lower court to the Sheriff, not the prison.

reversing the lower court in the instant case. Following the reasoning of our established precedent, and in light of the lower court's factual finding placing responsibility for the failure to transport Appellant on the Sheriff, not the prosecution, we find no abuse of discretion in the lower court's holding that the delay was not attributable to the Commonwealth.

For all the foregoing reasons, we conclude that the lower court did not err in denying Appellant's motions to dismiss pursuant to Pa.R.Crim.P. 600, and Appellant's motion challenging the weight of the evidence. We decline to disturb the sound reasoning of the lower court. Accordingly, we find no merit to Appellant's issues presented on appeal, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/16/2025