J-S01019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PETER JAY GRANT | : | |
| | : | |
| Appellant | : | No. 551 MDA 2024 |

Appeal from the Judgment of Sentence Entered March 12, 2024
In the Court of Common Pleas of Tioga County Criminal Division at
No(s): CP-59-CR-0000079-2022

BEFORE: NICHOLS, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                          **FILED JUNE 30, 2025**

Appellant, Peter Jay Grant, appeals *nunc pro tunc* from the judgment of sentence entered in the Tioga County Court of Common Pleas, following his jury trial convictions for strangulation, simple assault, and harassment.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Appellant met Selinna Pequignot, the victim, on a Facebook dating site in May 2021.  Two months after meeting, Appellant moved in with the victim to her apartment in Blossburg, Pennsylvania, where she lived with her daughter.  On September 6, 2021, the victim decided to break up with Appellant.  The victim testified that when she told Appellant that she wanted to break up with him,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2718(a)(1), 2701(a)(1), and 2709(a)(1), respectfully.

"he came at [her] with his hands, put them around [her] neck and was squeezing so [she] … could hardly breathe" and she "thought [she] was gonna die." (N.T. Trial, 6/23/22, at 67). The victim testified that Appellant threw her on the floor, punched her, and hit her repeatedly. She finally got Appellant to stop by telling him that she loved him. (*Id.*) Appellant and the victim then went outside for a cigarette, and the victim attempted to run into the yard and scream. Appellant then grabbed the victim, threw her down, and started hitting her again. (*Id.* at 68).

After the attack, the victim complained to Appellant that she needed to go to the hospital because her shoulder hurt badly. Appellant did not let the victim leave, and she remained in the house with him and without access to her phone for the next two days. On September 8, 2021, the victim convinced Appellant that if she could go to the hospital, she would tell the doctors that her injuries were from a barfight. Appellant followed the victim to the hospital, but did not go in with her. When she got to the check-in desk, the victim explained that she had been assaulted by her boyfriend. (*Id.* at 72-73).

After her initial evaluation and x-rays, the victim was seen by Nurse Jessica Birbeck. Nurse Birbeck, the manager of the forensic nurse program at UMPC Wellsboro, testified at trial as an expert in forensic nursing. Nurse Birbeck explained that her physical exam of the victim revealed several signs indicative of strangulation including tenderness, bruises, and scratches. (*Id.* at 99). In addition, Nurse Birbeck testified that the victim had injuries to her face including bruising on her eyelid and bruising and abrasions on her lip.

Nurse Birbeck also noted bruising on the victim's chest, arms, and significant bruising on the victim's right buttock. Nurse Birbeck explained that the initial x-rays taken revealed a fracture in the victim's left shoulder. (*Id.* at 108). Physician's Assistant ("PA") Nicholas Marciglio also testified concerning his treatment of the victim's shoulder injury, explaining that the chip fracture she suffered usually arises from some sort of fall or trauma where a person would land on that shoulder. (*Id.* at 122). PA Marciglio testified that the victim underwent arthroscopic surgery while at the hospital to repair her injury. (*Id.* at 123-24). The Commonwealth also introduced the testimony of the victim's neighbor, Julee Reid, who testified that on the day of the attack, she heard yelling but then turned up her television. On cross-examination, Ms. Reid testified that she did not hear anybody scream at the top of their lungs. (*Id.* at 132-33).

In his defense, Appellant called his cousin, Wanita Philips, as a witness. Ms. Philips testified that she was connected to the victim over Facebook, and they communicated via Facebook messenger a couple times a week. The Commonwealth objected to the admission of printouts of Facebook messenger conversations between the victim's account and Ms. Philips, arguing that the messages had not been properly authenticated. The court admitted Ms. Philips' messages, but did not admit any of the responses. (*Id.* at 156). In addition, Appellant testified in his own defense, asserting that the victim had initiated the altercation, and that his actions were solely in self-defense. (*Id.* at 190).

- 3 -

At the close of trial, the jury convicted Appellant of strangulation and simple assault. (*Id.* at 234). The court found Appellant guilty of the summary offence of harassment. (*Id.* at 236). Appellant immediately moved for judgment notwithstanding the verdict. The court took the matter under advisement and denied Appellant's motion prior to sentencing.

On September 12, 2022, the court sentenced Appellant to 25-50 years' imprisonment for strangulation, and imposed a consecutive term of 12-24 months' imprisonment for simple assault. No further penalty was imposed for harassment. Appellant filed a notice of appeal on October 13, 2022, which this Court quashed as untimely.

Appellant filed a *pro se* Post Conviction Relief Act petition on March 13, 2023, seeking reinstatement of Appellant's post-sentence and appellate rights *nunc pro tunc*. The PCRA court granted Appellant's request on September 7, 2023, and ordered that Appellant have 30 days to file a post-sentence motion, and if choosing not to file a post-sentence motion, 45 days to file an appeal.[2]

---

[2] We recognize that when a court reinstates a defendant's post-sentence and direct appeal rights *nunc pro tunc*, the defendant is still subject to the usual time constraints. **See Commonwealth v. Taylor**, 277 A.3d 577, 584 (Pa.Super. 2022). **See also Commonwealth v. Wright**, 846 A.2d 730, 734-35 (Pa.Super. 2004) (stating, "[t]o permit an appellant to file the appeal more than thirty days after the reinstatement would put the appellant in a better position than he would have been absent counsel's failure to file a timely direct appeal"). Here, the court permitted Appellant additional time to file both the post-sentence motions and direct appeal right *nunc pro tunc*. Because the court misadvised Appellant about his appellate rights, however, we deem any error in the court's advice a breakdown in the operations of the court to excuse any untimeliness with Appellant's filings. **See Commonwealth v.**
*(Footnote Continued Next Page)*

On September 21, 2023, Appellant filed a post-sentence motion seeking a new trial and arguing that the court erred in imposing a mandatory minimum sentence. The court granted the post-sentence motion in part and vacated the original sentence imposed.[3]

On March 8, 2024, the court conducted another sentencing hearing and on March 12, 2024, the court imposed a sentence of 10-20 years of imprisonment for strangulation, plus a concurrent sentence of 1-2 years' imprisonment for simple assault. Appellant filed a timely motion for post-sentence relief, which the trial court denied on March 28, 2024. Appellant thereafter filed a timely notice of appeal on April 18, 2024.[4]

Appellant raises the following two issues on appeal:

> 1. Did the court abuse its discretion in precluding Facebook messenger evidence because of an alleged lack of authentication?
>
> 2. Did the court abuse its discretion in determining that the verdict was not against the weight of the evidence?

(Appellant's Brief at 4) (unnecessary capitalization omitted; questions

---

*Patterson*, 940 A.2d 493, 499 (Pa.Super. 2007), *appeal denied*, 599 Pa. 691, 960 A.2d 838 (2008).

[3] The court denied Appellant's request for a new trial based on the weight of the evidence and various evidentiary concerns raised.

[4] The certified record does not contain either a Pa.R.A.P. 1925(b) order or a concise statement of errors complained of on appeal. However, included in Appellant's reproduced record is a copy of a concise statement of errors complained of on appeal, which Appellant indicates he served upon the trial court on April 30, 2024.

reordered for purposes of disposition).

In his first issue, Appellant argues that the court erred by permitting Ms. Philips to testify as to her Facebook messenger communications with the victim but precluding the admission of the responses to those messages. Appellant insists that the trial court erred in finding that the messages were not properly authenticated. Appellant claims that authentication requires a low burden of proof and that digital evidence may be admitted based on circumstantial evidence of authorship. Appellant contends that the evidence was sufficient to establish that the victim was the author of the responsive messages. Appellant highlights testimony from Ms. Philips that she connected with the victim on Facebook and would communicate with her 2-3 times per week. Furthermore, Ms. Philips indicated that she knew it was the victim who was responding because the account appeared to be the victim's profile with the victim's picture, and she recognized the manner in which the victim wrote her responses. Appellant insists that he met the low burden of proof for authentication of these digital messages, and the court abused its discretion in not admitting them to the jury. We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court ... [and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or

the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. [I]f in reaching a conclusion the trial court [overrides] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

**Commonwealth v. Belknap**, 105 A.3d 7, 9-10 (Pa.Super. 2014), *appeal denied*, 632 Pa. 667, 117 A.3d 294 (2015) (internal citations and quotation marks omitted).

This Court has explained:

Pennsylvania Rule of Evidence 901 governs the authentication of evidence. As a general rule "authentication requires a low burden of proof: [t]he proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be." **Commonwealth v. Jackson**, 283 A.3d 814, 818 (Pa.Super. 2022) (quoting Pa.R.A.P. 901(a)) (other citation omitted).

Rule 901(b)(11) specifically addresses the authentication of "digital evidence," which is defined as "a communication, statement, or image existing in an electronic medium," such as "emails, text messages, social media postings, and images." Pa.R.E. 901(b)(11), cmt. The rule provides that a proponent may show that an individual or entity is connected to digital evidence through:

(A) direct evidence such as testimony of a person with personal knowledge; or

(B) circumstantial evidence such as:

(i) identifying content; or

(ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

- 7 -

Pa.R.E. 901(b)(11).

The comment to Rule 901 further clarifies that "the proponent of digital evidence is not required to prove that no one else could be the author. Rather, the proponent must produce sufficient evidence to support a finding that a particular person or entity was the author." Pa.R.E. 901, cmt. Furthermore,

[c]ircumstantial evidence of identifying content under Pa.R.E. 901(b)(11)(B)(i) may include self-identification or other distinctive characteristics, including a display of knowledge only possessed by the author. Circumstantial evidence of content may be sufficient to connect the digital evidence to its author.

Circumstantial evidence of ownership, possession, control, or access to a device or account alone is insufficient for authentication of authorship of digital evidence under Pa.R.E. 901(b)(11)(B)(ii). *See, e.g.*, *Commonwealth v. Mangel*, 181 A.3d 1154, 1163 (Pa.Super. 2018) (social media account bearing defendant's name, hometown, and high school was insufficient to authenticate the online and mobile device chat messages as having been authored by defendant). However, this evidence is probative in combination with other evidence of the author's identity.

Pa.R.E. 901, cmt.

*Commonwealth v. Watkins*, 315 A.3d 145, 149-50 (Pa.Super. 2024).

"Social media evidence presents additional challenges because of the great ease with which a social media account may be falsified, or a legitimate account may be accessed by an imposter." *Mangel, supra* at 1162 (citation omitted).

Instantly, Ms. Philips testified at trial that she knew that the messages

received were from the victim because she had communicated through Facebook messenger with the victim before and the messages came from an account with the victim's profile and picture. (*See* N.T. Trial at 152). Ms. Philips also stated that "nothing changed in the conversations as far as the way [the victim] spoke." (*Id.*) Nevertheless, the trial court noted that during the time when the victim allegedly responded to Ms. Philips, victim had claimed she lacked access to her phone and did not have contact with Ms. Philips. (*See id.* at 69) (victim testifying, "I had—did not have my phone, he took my phone"). (*See also id.* at 69, 80). Indeed, the victim testified that Appellant often had access to her phone and would "rummage through it." (*Id.* at 66). She stated that Appellant "had a special app that went from his phone and … all notifications of [hers] from Facebook, email, texts, phone calls went straight to his phone so he knew what [she] was doing at all times." (*Id.* at 65). Thus, the trial court explained that "there was an insufficient basis to adequately verify that each of [the responses to Ms. Philips' Facebook messenger messages] were in fact sent by the victim." (Trial Court Opinion, dated 1/11/24, at 2).

On this record, we cannot say that the court abused its discretion in making its evidentiary ruling based on a lack of proper authentication.[5] **See**

---

[5] We note that the trial court presented two bases to support its preclusion of the evidence: first that it was not properly authenticated; and second, that the evidence was improper hearsay not subject to an exception. As we can
*(Footnote Continued Next Page)*

*Belknap, supra*.  The circumstantial evidence of the Facebook account being associated with the victim's name and photograph was simply not enough to demonstrate that the victim was the author.  *See Watkins, supra*; *Mangel, supra*.  Therefore, Appellant's first issue merits no relief.

In his second issue, Appellant argues that the trial court erred when it denied his request for a new trial based on the verdict being against the weight of the evidence.  Appellant insists that certain facts were so clearly of greater weight that to ignore them or give them equal weight denied justice.  Specifically, Appellant claims that the fact that neither the victim's daughter nor her neighbor heard her screaming during the attack means that the victim testified to an impossibility.[6]  Appellant contends that impossible facts cannot form the basis for a conviction.  Appellant concludes he is entitled to a new trial on these grounds.  We disagree.

In reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of the fact who is free to believe all, part or none of the evidence and to determine the credibility of the

_____

affirm a trial court's evidentiary ruling on any proper basis, we decline to address the court's alternate ground for precluding the evidence.  *See Commonwealth v. Johnson*, 639 Pa. 196, 224 n.15, 160 A.3d 127, 144 n.15 (2017).

[6] The victim's daughter did not testify at trial.  During the victim's testimony, she stated that her daughter was at home in her bedroom sleeping when Appellant had attacked her.  (*See* N.T. Trial at 67-69).  The victim further testified that her daughter did not wake up during the attack.  (*See id.* at 82).

> witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the ... verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> *Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellant court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted). A "trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Rivera*, 603 Pa. 340, 363, 983 A.2d 1211, 1225 (2009), *cert. denied*, 560 U.S. 909, 130 S.Ct. 3282, 176 L.Ed.2d 1191 (2010). "[I]f there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm." *Commonwealth v. McFarland*, 278 A.3d 369, 385 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 291 A.3d 863 (2023) (quoting *Corvin v. Tihansky*, 184 A.3d 986, 992-93 (Pa.Super. 2018)).

Here, the trial court explained that it did not find that the evidence was so tenuous, vague and uncertain that the verdict shocked the conscious of the court. Thus, it denied Appellant's motion for a new trial. (*See* Trial Court Opinion, 1/11/24, at 1). Appellant's argument essentially challenges the credibility of the victim's testimony that she screamed at the top of her lungs

- 11 -

during the attack. Nevertheless, it was within the jury's purview to determine the credibility of the victim's testimony, and we will not substitute our judgment for that of the fact-finder. **See Champney, supra**. On this record, we cannot say that the trial court abused its discretion in denying Appellant's challenge to the weight of the evidence. **See id.**; **McFarland, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/30/2025