J-A18026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TARAY D. HERRING | : | |
| | : | |
| Appellant | : | No. 1415 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 9, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002146-2022

BEFORE: OLSON, J., DUBOW, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED AUGUST 1, 2025**

Taray D. Herring ("Herring") appeals from the judgment of sentence imposed by the Philadelphia County Court of Common Pleas ("trial court") following his convictions of first-degree murder, conspiracy to commit first-degree murder, possession of an instrument of a crime ("PIC"), burglary, and abuse of a corpse.[1] Herring's counsel, George S. Yacoubian ("Counsel"), seeks to withdraw from representation pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa.

_____

[1] 18 Pa.C.S. §§ 2502(a), 903(a), 907(a), 3502(a)(1)(i), 5510. We note that the Commonwealth charged Herring at two separate docket numbers—at CP-51-CR-2146-2022, it charged Herring with murder of the first degree, conspiracy to commit murder of the first degree, and PIC; at CP-51-CR-2145-2022, it charged him with burglary and abuse of a corpse. He was tried for all charges at a single trial. However, Herring filed an appeal only as to his judgment of sentence at docket number 2146-2022. ***See*** Trial Court Opinion, 2/11/2025, at 1 n.1.

2009). Upon review, we grant Counsel's petition to withdraw and affirm Herring's judgment of sentence.

On February 7, 2021, Herring and his former paramour Jeannette Pace ("Pace") went to the home of Peter Gerold ("Gerold") with a plan to rob him. After Gerold admitted them into his home, Herring gave Pace a taser, which she used to incapacitate Gerold. Herring and Pace then tied him up and demanded that he reveal the PIN numbers for his credit cards. Gerold refused, and Pace left the home with the credit cards to attempt to use them.

Later, when Pace returned to Gerold's home, she found Gerold dead with ligature marks on his neck and damage to his face. Herring moved Gerold's body into a shed and stole several of his belongings. Herring then dismembered Gerold's body and boiled some of the body parts in oil. Four days later, a concerned neighbor saw a U-Haul truck in Gerold's driveway and called the police. The neighbor later saw Herring dragging a plastic bag into the U-Haul.

The police subsequently stopped the U-Haul and found Herring and a driver inside. The driver consented to a search of the back of the U-Haul, after which police found a bloody bag. The police asked Herring where the blood had come from, and he responded it was a cow's leg used for target practice. The police opened the bag and found human remains.

They then transported Herring to the police station during which he made several unprompted inculpatory statements in the vehicle. Detectives

at the police station read Herring his **Miranda**[2] warnings, which he waived. Herring subsequently admitted to the detectives that he dismembered Gerold's corpse, boiled some of the body parts in oil, and left the body parts in different places. However, Herring did not admit to committing the murder. The Commonwealth charged him with numerous crimes.

Herring filed a suppression motion, arguing the court should suppress his oral and written statements and any physical evidence derived therefrom. After a hearing, the trial court denied the motion. The consolidated cases proceeded to a jury trial. Ultimately, the jury convicted Herring of the aforementioned crimes. The trial court sentenced Herring to life imprisonment for the murder conviction, twenty to forty years of incarceration for conspiracy, and two-and-a half to five years of incarceration for PIC. Herring filed post-sentence motions, which the trial court denied. This timely appeal followed.

As previously mentioned, Counsel filed an **Anders** brief and petition to withdraw in this Court. When faced with an **Anders** brief, we may not review the merits of the underlying issues or allow counsel to withdraw without first deciding whether counsel has complied with all requirements set forth in **Anders** and **Santiago**. **Commonwealth v. Cox**, 231 A.3d 1011, 1014 (Pa. Super. 2020). These mandates arise because a criminal defendant has a

_____

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

- 3 -

constitutional right to a direct appeal and to be represented by counsel for the pendency of that appeal. *Commonwealth v. Woods*, 939 A.2d 896, 898 (Pa. Super. 2007). We have summarized the requirements as follows:

> Direct appeal counsel seeking to withdraw under *Anders* must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an *Anders* brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof.
>
> *Anders* counsel must also provide a copy of the *Anders* petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed pro se or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of *Anders*, this Court will deny the petition to withdraw and remand the case with appropriate instructions (e.g., directing counsel either to comply with *Anders* or file an advocate's brief on [a]ppellant's behalf).

*Id.* (citations omitted).

Additionally, *Santiago* sets forth precisely what an *Anders* brief must contain:

> [T]he *Anders* brief that accompanies court-appointed counsel's petition to withdraw … must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. If counsel satisfied the above requirements and the appellant filed a pro se response, this Court reviews only the issues raised

in the *Anders* brief and pro se response. *Commonwealth v. Bennet*, 124 A.3d 327, 333 (Pa. Super. 2015).

Here, Counsel has complied with the requirements of *Anders* and *Santiago*. Counsel filed a petition to withdraw, averring the appeal is frivolous and an *Anders* brief explaining potential issues that could be raised on appeal. *See* Motion to Withdraw as Counsel, 03/03/2025; *Anders* Brief at 9-12. Counsel's *Anders* brief summarizes the facts and procedural history and discusses the issues that could arguably support Herring's appeal. *See Anders* Brief at 6-8, 9-12. The brief concludes that the appeal is frivolous and describes how Counsel reached this conclusion based on the facts and relevant case law. *Id.* at 9-12. Counsel also sent Herring a letter informing him of his right to retain new counsel, proceed pro se, or raise any additional points worthy of this Court's attention, and attached the petition to withdraw and *Anders* brief. *See* Letter, 03/03/2025.[3]

Because Counsel met the procedural requirements to withdraw, we now turn to the issues Counsel raised in the *Anders* brief:

1. [Whether] [t]he [c]ourt erred by denying, on 7/31/23, [Herring's] [m]otion to [s]uppress his [s]tatement to police;

2. [Whether] [t]he [c]ourt erred by denying, on 7/31/23, [Herring's] [m]otion to [s]uppress [p]hysical [e]vidence;

---

[3] We note that this Court previously found that Counsel failed to provide these documents to Herring. *See Commonwealth v. Herring*, 1415 EDA 2024 (Pa. Super. Mar. 10, 2025) (per curiam order). In response to this Court's order Counsel provided this Court a copy of the letter he sent to Herring on March 3, 2025, indicating he had fulfilled these requirements.

3. [Whether] [t]he verdicts on first-degree murder, criminal conspiracy to commit murder, and PIC were each against the weight of the evidence; and,

4. [Whether] [t]he evidence was not sufficient to establish [Herring's] guilt beyond a reasonable doubt:

   a. As to first-degree murder, as the evidence was not sufficient to demonstrate a specific intent to kill;

   b. As to criminal conspiracy to commit murder, as the evidence was not sufficient to demonstrate any conspiratorial agreement; and,

   c. As to PIC, as the evidence was not sufficient to demonstrate the [Herring] employed an instrument with the intent to use it criminally.

*Id.* at 7-8. Herring filed a pro se response raising an additional suppression question and ineffective assistance of counsel claims. Pro Se Response to *Anders* Brief at 4-7.

## **Motion to Suppress**

In his *Anders* brief, Counsel asserts that the trial court erred in denying his motion to suppress his statements to the police made prior to speaking with detectives. *Anders* Brief at 9. In his pro se response to Counsel's *Anders* brief, Herring argues the trial court erred in denying his motion to suppress the statements he made to the interrogating detectives, after police provided him with *Miranda* warnings, because he had already requested counsel to different police officers. Pro Se Response to *Anders* Brief at 4.

Our review of a challenge to a trial court's denial of a motion to suppress is well established:

- 6 -

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre[]trial motion to suppress.

*Commonwealth v. Freeman*, 150 A.3d 32, 34-35 (Pa. Super. 2016) (citation omitted).

*Miranda* rights are required only prior to a custodial interrogation. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [his] freedom of action in any significant way. Furthermore, volunteered or spontaneous utterances by an individual are admissible without the administration of *Miranda* warnings. When a defendant gives a statement without police interrogation, we consider the statement to be 'volunteered' and not subject to suppression.

*Commonwealth v. Garvin*, 50 A.3d 694, 698 (Pa. Super. 2012) (citation and quotation marks omitted).

[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the

- 7 -

suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

*Commonwealth v. Ventura*, 975 A.2d 1128, 1136–37 (Pa. Super. 2009) (citation omitted).

At the suppression hearing, Officer Bryan Howell, the arresting officer, testified that after police discovered human remains in the U-Haul, Herring simply said "lawyer." N.T., 07/31/2023, at 30. Officer Howell testified that while in the back of a police car and without prompting, Herring spontaneously stated he was paid $1,000 to dispose of the body. *Id.* at 32. He advised Herring to stop speaking. *Id.* Herring then stated that there was no crime scene because he cleaned it up. *Id.* Officer Howell testified Herring was laughing and said there was blood everywhere, including on his clothes. *Id.* at 33. Lastly, Herring said in the police station elevator he would have gotten away with it had it not been for the neighbor. *Id.* at 33-34. Neither the officer nor his partner asked Herring any questions during this timeframe. *Id.* 30-34.

Detective David McAndrews testified that he read Herring his *Miranda* rights after entering the interview room at the police station. *Id.* at 51-52.

Herring signed a waiver of his *Miranda* rights at that time. *Id.* Detective Edward Tolliver testified that Herring then admitted to dismembering Gerold's body. *Id.* at 73. The trial court found the Commonwealth witnesses' testimony to be credible. *Id.* at 117.

Regarding Herring's pre-*Miranda* statements, made on his way to his interview with detectives, the trial court found that the police did not interrogate Herring when he made the four inculpatory statements and that Herring made them voluntarily. *Id.* at 119. We agree. Each statement Herring made was unprompted. In fact, Officer Howell advised Herring to stop talking in the police vehicle. The trial court's suppression decision is clearly supported by relevant case law. *See Commonwealth v. Johnson*, 42 A.3d 1017, 1029 (Pa. 2012) (finding the trial court properly denied a motion to suppress a voluntary, inculpatory statement the defendant made, not preceded by police questioning, en route to the police station); *see also Commonwealth v. Cornelius*, 856 A.2d 62, 75-76 (Pa. Super. 2004) (finding the trial court properly denied a motion to suppress when the defendant made repeated voluntary and inculpatory statements without *Miranda* warnings). We therefore agree with Counsel that this issue is frivolous.

Regarding Herring's statements made after the detectives administered the *Miranda* warnings, the record reflects that Herring's trial counsel conceded these statements were admissible at the suppression hearing. N.T.,

7/31/2023, at 12-13. When counsel concedes an issue at the suppression hearing, it is waived on appeal. *Commonwealth v. Ross*, 330 A.3d 1262, 1268 (Pa. Super. 2025) (finding appellant waived his *Miranda* claim on appeal when his counsel conceded at the suppression hearing that there was no *Miranda* violation). As such, this issue is likewise frivolous.

## Sufficiency of the Evidence

Counsel next claims there is insufficient evidence to sustain Herring's murder, conspiracy, and PIC convictions. *Anders* Brief at 10. This Court assesses challenges to the sufficiency of the evidence to support a conviction according to the following standard:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [factfinder].

*Commonwealth v. Scott*, 325 A.3d 844, 849 (Pa. Super. 2024) (citation omitted).

### First-Degree Murder

- 10 -

First-degree murder requires the Commonwealth to prove "(1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and the specific intent to kill." ***Commonwealth v. Anderson***, 323 A.3d 744, 753 (Pa. 2024) (citation omitted); ***see also*** 18 Pa.C.S. § 2502(a).

The record reflects a medical examiner testified Gerold's cause of death was homicide. N.T., 5/07/2024, at 21-22. Officer Howell testified that Herring was in the U-Haul that contained one of Gerold's body parts, as confirmed by the medical examiner with DNA analysis. ***Id.*** at 19-21, 44-48. He also testified Herring made several incriminating statements. ***Id.*** at 51-52.

Pace testified next that she and Herring planned to rob Gerold. ***Id.*** at 89-90. She tased Gerold and tied him up with Herring. ***Id.*** at 87, 91. After leaving the apartment, Pace testified she returned approximately forty minutes later to find Gerold dead with ligature marks on his neck. ***Id.*** at 95-96. She then helped Herring dispose of the body. ***Id.*** at 96-98. Detective McAndrews testified that Herring admitted to cutting up Gerold's body and knowing where the body parts were located. N.T., 5/08/2024, at 31, 36.

The evidence unquestionably was sufficient to support the first-degree murder conviction. The jury could reasonably infer that Herring, left alone with a restrained victim, killed Gerold when he is found with the deceased after being alone with him for forty minutes. Further, evidence that Herring strangling Gerold and dismembering his body could lead a reasonable jury to

infer Herring willfully and deliberately murdered Gerold. **See Commonwealth v. Martin**, 101 A.3d 706, 719 (Pa. 2014) (finding there was sufficient evidence to support specific intent and malice when the defendant strangled the victim and buried her). Therefore, appeal of this issue is frivolous.

Conspiracy

Criminal conspiracy requires the Commonwealth to prove "1) an agreement, 2) shared criminal intent, and 3) an overt act." **Commonwealth v. Johnson**, 480 A.3d 474, 479 (Pa. Super. 2018) (citation omitted); **see also** 18 Pa.C.S. § 903(a). "[A] conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation." **Johnson**, 480 A.3d at 479.

Pace testified she and Herring had planned to rob Gerold. N.T., 5/07/2024, at 88-89. After arriving, Herring instructed Pace to tase Gerold, which she did. **Id.** at 85, 87. Pace left Gerold's home and upon her return, found him dead. **Id.** at 93, 96. Pace testified she then aided in disposing of Gerold's body. **Id.** at 96-98. Pace also testified she stole $1,500 from Gerold for herself after he was dead. **Id.** at 159.

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, the jury could reasonably infer that Herring had agreed with Pace to commit murder and that they shared this intent. **See**

*Commonwealth v. Stokes*, 38 A.3d 846, 855 (Pa. Super. 2011) (finding sufficient evidence to support conviction of conspiracy to commit murder when the defendant shot the victim after following him into a restaurant with a group of people who all attacked the victim).  We agree with Counsel that the appeal of this issue is frivolous.

PIC

Lastly, PIC requires the Commonwealth to prove two elements: "(1) possession of an object that is an instrument of crime and (2) intent to use the object for a criminal purpose."  *Commonwealth v. Brockington*, 230 A.3d 1209, 1213 (Pa. Super. 2020) (citation omitted); *see also* 18 Pa.C.S. § 907(a).  An instrument of a crime can be either "anything specially made or specially adapted for criminal use" or "anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have."  18 Pa.C.S. § 907(d).  "The actor's criminal purpose … provides the touchstone of his liability for the PIC offense, and such purpose may be inferred from the circumstances surrounding the possession."  *Brockington*, 230 A.3d at 1213.

Officer Howell testified to discovering tools along with Gerold's remains in the back of the U-Haul in which Herring was traveling.  N.T., 5/07/2024, at 48.  Detective McAndrews later testified Herring admitted to dismembering Gerold.  N.T., 05/08/2024, at 20.  The detective further recounted Herring's

admission to using various saws to cut up Gerold's body and to boiling the body parts in oil. *Id.* at 22-23.

This evidence is sufficient to demonstrate Herring possessed saws and other tools, which he intended to employ criminally to dismember Gerold's body parts. Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to support the conviction of PIC. *See* 18 Pa.C.S. § 907(a), (d); *see also Brockington*, 230 A.3d at 1213. This claim is therefore frivolous.

**Weight of the Evidence**

Counsel also asserts that Herring's murder, conspiracy, and PIC convictions are against the weight of the evidence. *Anders* Brief at 9.

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Watkins*, 315 A.3d 145, 151 (Pa. Super. 2024) (citation omitted).

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings

and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Juray***, 275 A.3d 1037, 1047 (Pa. Super. 2022) (citation omitted).

The trial court reviewed the testimony and evidence and concluded it was "not at all shocked by those verdicts." Trial Court Opinion, 2/11/2025, at 9. The record reflects that the trial court had the opportunity to hear and see the testimony of the police officers. The trial court found the Commonwealth's witnesses to be credible. ***Id.*** As discussed above, Herring confessed to committing several of the crimes in question, and there was ample evidence presented to support his convictions; the defense did not call any witnesses nor present any evidence. To the extent Herring asks this Court to reweigh the evidence presented at trial, it is beyond the permissible role of this Court. ***See Commonwealth v. Collins***, 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact") (citation omitted). In short, there is simply no basis for this Court to find that the trial court abused its discretion in rejecting Herring's weight of the evidence challenge. ***See Commonwealth v. Gilliam***, 249 A.3d 257, 270 (Pa. Super. 2021) (concluding that the trial court did not abuse its discretion in denying appellant's weight challenge where he merely asked this

Court to assume the role of factfinder and reweigh the evidence in his favor). We therefore agree with Counsel that this claim is frivolous.

**Ineffective Assistance of Counsel**

In a pro se response to Counsel's *Anders* brief, Herring argues both his trial and appellate counsel were ineffective. *See* Pro Se Response to *Anders* Brief at 5-7. He objects to his appellate counsel not raising certain issues before this Court and asserts that his trial counsel had a conflict of interest in representing him and failed to move to dismiss his charges on prompt trial grounds. *Id.*

Generally, a criminal defendant may not assert claims of ineffective assistance of counsel on direct appeal. *Commonwealth v. Holmes*, 79 A.3d 563, 563 (Pa. 2013). Instead, we defer such review to petitions under the Post Conviction Relief Act ("PCRA"). *Id.* The Pennsylvania Supreme Court has recognized three exceptions to this rule: (1) a discrete claim "is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice;" (2) there is good cause shown and the defendant expressly and knowingly waived his or her right to seek PCRA review; or (3) the defendant is "statutorily precluded from obtaining subsequent PCRA review." *Id.* at 563-64 (outlining the first two exceptions); *Commonwealth v. Delgros*, 183 A.3d 352, 361 (Pa. 2018) (stating the third exception).

There is nothing in the record to indicate that Herring has satisfied any of these exceptions; therefore, his ineffectiveness claims are premature. Any claim of counsels' ineffectiveness must be deferred to collateral review.

Having found no non-frivolous issues in either Counsel's ***Anders'*** brief or Herring's pro se response, we grant Counsel's petition to withdraw and affirm Herring's judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/1/2025